Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

TIGER LILY LLC;
HUNTER OAKS APARTMENTS UTAH, LLC;
NORTH 22ND FLAT, LLC;
CHERRY HILL GARDENS LLC;
CHURCHILL TOWNHOMES LLC;
BRITTANY RAILEY; and
APPLEWOOD PROPERTY MANAGEMENT, LLC,

     Plaintiffs,

v.                                     No: 2:20-cv-2692-MSN-atc

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
and BENJAMIN S. CARSON, M.D. in his official capacity as United States Secretary of
Housing and Urban Development;
UNITED STATES DEPARTMENT OF JUSTICE
and WILLIAM P. BARR, in his official capacity as United States Attorney General;
UNITED STATES CENTER FOR DISEASE CONTROL AND PREVENTION
and NINA B. WITKOVSKY, in her official capacity as Acting Chief of Staff of the Center
for Disease Control and Prevention;
UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES
and ALEX AZAR, in his official capacity as United States Secretary of Health and Human
Services;
VICE ADMIRAL JEROME M. ADAMS, M.D., in his official capacity as United States
Surgeon General; and
D. MICHAEL DUNAVANT, in his official capacity as United States Attorney General for
the Western District of Tennessee,

     Defendants.

ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Before the Court is Plaintiffs' Motion and Application for Emergency Hearing and

Preliminary Injunction ("Preliminary Injunction Motion") (ECF No. 12) filed September 27,

2020.  Defendants responded in opposition on October 14, 2020.  (ECF No. 29.)  Plaintiffs

filed a reply on October 27, 2020.  (ECF No. 49.)  The Court held a Skype videoconference hearing on the Preliminary Injunction Motion on October 30, 2020.  (ECF No. 67.)  For the reasons set forth below, Plaintiffs' Preliminary Injunction Motion is **DENIED**.

## <u>INTRODUCTION</u>

Attorney General William Barr recently said, "the Constitution is not suspended in times of crisis. We must therefore be vigilant to ensure its protections are preserved, at the same time the public is protected." *Balancing Public Safety with the Preservation of Civil Rights*, Memorandum to the Assistant Attorney General for Civil Rights and All United States Attorneys (April 27, 2020).  The process of eviction, already fraught with competing considerations and difficult decisions, is made even more complex and difficult when considered through the kaleidoscopic lens of the COVID-19 pandemic.  On the one hand, we must be mindful of potential risks to public health, and on the other, harm to private property rights and the separation of powers.  What both concerns have in common is the need to observe and uphold the rule of law and, where implicated, our Constitution.  Thus, while this is primarily a case of statutory construction, what remains to be seen is whether, absent appropriate judicial restraint, the Constitution and COVID-19 might clash.  As the Sixth Circuit recently said, "[w]hile the law may take periodic naps during a pandemic, we will not let it sleep through one."  *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 615 (6th Cir. 2020).

## BACKGROUND

This litigation occurs in the midst of an unprecedented time in our nation's history.  In December 2019, a novel coronavirus was first detected in Wuhan, Hubei Province, in the People's Republic of China.  Upon sequencing of the virus's genome, it was discovered that the virus was genetically related to the coronavirus responsible for the SARS outbreak of 2003, and the International Committee for Taxonomy of Viruses then named the virus as severe acute respiratory syndrome coronavirus-2 (SARS-CoV-2).  The SARS-CoV-2 virus causes a respiratory disease known as COVID-19.

Individuals who contract COVID-19 may suffer from a wide variety of symptoms, including fever or chills, cough, fatigue, muscle or body aches, loss of taste or smell, sore throat, and shortness of breath or difficulty breathing.  Older adults and people who have severe underlying medical conditions like heart or lung disease are at a higher risk of developing more serious complications from COVID-19.

On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic.  On March 12, 2020, Tennessee Governor Bill Lee issued Executive Order No. 14 declaring a State of Emergency in response to the COVID-19 outbreak.   On March 13, 2020, President Trump declared a national emergency for COVID-19.

On March 27, 2020, President Trump signed into law the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act").  Sections 4022 and 4023 of the CARES Act provided protection to those with federally-backed mortgages from foreclosures until at least August 31, 2020 and provided a right to request a mortgage forbearance for up to 180 days.

Section 4024(b) of the CARES Act provided for a 120-day moratorium on eviction filings for rental units in properties that participated in federal assistance programs or had a federally backed mortgage or multifamily loan.  Congress did not renew the CARES Act protections for homeowners or renters upon their expiration.

On August 8, 2020, President Trump issued an executive order directing the Secretary of Health and Human Services and the Director of the Centers for Disease Control and Prevention ("CDC") to "consider whether any measures temporarily halting residential evictions for any tenants for failure to pay rent [were] reasonably necessary to prevent the further spread of COVID-19 from one State or possession into any other State or possession." On September 4, 2020, the CDC issued the "Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19" ("Halt Order").  85 Fed. Reg. 55,292 (Sept. 4, 2020).

The Halt Order imposes a mortarium on residential evictions of "covered persons" through December 31, 2020, "subject to further extension, modification, or rescission."  *Id.* at 55,296.  To qualify for protection under the Halt Order as "covered persons," tenants must submit a declaration to their landlord under penalty of perjury affirming that they meet the following seven criteria:

(1) they have used best efforts to obtain government assistance to make rental payments;

(2) they expect to earn less than $99,000 in annual income in 2020, were not required to pay income taxes in 2019, or qualified for a stimulus check under the CARES Act;

(3) they are unable to pay full rent due to "substantial loss of household income, loss of compensable hours of work or wages, lay-offs, or extraordinary out-of-pocket medical expenses";

(4) they are using best efforts to make partial payments;

(5) they would likely experience homelessness or need to move into a shared residence if evicted;

(6) they understand that rent obligations still apply; and

(7) they understand that the moratorium ends on December 31, 2020.  *Id.* at 55,297.

The Halt Order provides extensive background on COVID-19 and its historic threat to public health.  The Halt Order notes that "[t]he virus that causes COVID-19 spreads very easily between people who are in close contact with one another (within about 6 feet), mainly through respiratory droplets produced when an infected person coughs, sneezes, or talks."  *Id.* at 55,293.  Further, "[s]evere illness means that persons with COVID-19 may require hospitalization, intensive care, or a ventilator to help them breathe, and may be fatal."  *Id.*

The Halt Order also makes specific findings about the use and effectiveness of eviction moratoria in the context of a pandemic, providing that such moratoria "facilitate self-isolation by people who become ill or who are at risk for severe illness from COVID-19 due to an underlying medical condition."  *Id.* at 55,294.  Further, that eviction moratoria "allow State and local authorities to more easily implement stay-at-home and social distancing directives to mitigate the community spread of COVID-19," and that "housing stability helps protect public health because homelessness increases the likelihood of individuals moving into close quarters in congregate settings, such as homeless shelters, which then puts individuals at higher risk to COVID-19."  *Id.*

5

The Halt Order specifies that it "does not apply in any State, local, territorial, or tribal area with a moratorium on residential evictions that provides the same or greater level of public-health protection" as the requirements listed in the Halt Order. *Id.* The Halt Order does not relieve any individual of the obligation to pay rent, and nothing in the Halt Order prevents landlords from charging or collecting fees, penalties, or interest as a result of a failure to pay rent. *Id.* The Halt Order also does not preclude evictions based on a tenant, lessee, or resident:

    (1) engaging in criminal activity while on the premises;

    (2) threatening the health or safety of other residents;

    (3) damaging property;

    (4) violating any applicable building code or other similar regulations as to health and safety; or

    (5) violating any other contractual obligation other than the timely payment of rent. *Id.*

The Halt Order imposes criminal penalties for those individuals and organizations that violate its provisions. Individuals could be subject to a fine of up to $250,000, one year in jail, or both, for violating the Halt Order. *Id.* at 55,296. Organizations could be subject to a fine of up to $500,000. *Id.*

Plaintiffs in this matter are a group of business organizations and individuals that own and/or manage residential real property in the form of multi-family apartment complexes, duplexes, townhomes, and single-family residences located within the Western District of Tennessee. (ECF No. 21 at PageID 195, 199–200.) On September 16, 2020, Plaintiffs filed their Complaint for Declaratory Judgment and Injunctive Relief (ECF No. 1) seeking a declaratory judgment that the Halt Order violates the Constitution and for injunctive relief to

prevent Defendants from enforcing the Halt Order.  On September 27, 2020, Plaintiffs filed a

Motion and Application for Emergency Hearing and Preliminary Injunction (ECF No. 12).  On

October 8, 2020, Plaintiffs filed an Amended Complaint, which presents an additional claim

but seeks the same relief set forth in their original Complaint.  (*See* ECF No. 21.)

In their Preliminary Injunction Motion, Plaintiffs argue they are likely to prevail on the

merits of the following claims:

(1) the CDC's action in promulgating the Halt Order is *ultra vires*;

(2) the Halt Order violates the Takings Clause of the Fifth Amendment;

(3) the Halt Order violates Plaintiffs' rights to Substantive Due Process;

(4) the Halt Order violates Plaintiffs' rights to Procedural Due Process;

(5) the Halt Order violates the Tenth Amendment;

(6) the Halt Order violates the Anti-Commandeering Doctrine;

(7) the Halt Order cannot preempt state law under the Supremacy Clause;

(8) the Halt Order is an unlawful suspension of law; and

(9) the Halt Order violates Plaintiffs' right to access the judiciary.

In their Preliminary Injunction Motion, Plaintiffs ask this court to "strike down" the

Halt Order, or in the alternative, to "grant immediate injunctive relief against the Defendants

to enforce any element of the Halt Order and/or to pursue any criminal or civil penalties against

Plaintiffs for alleged violations of the Halt Order."  (ECF No. 12 at PageID 123.)  At this time,

the Court addresses only Plaintiffs' request for preliminary injunctive relief and reserves ruling

on Plaintiffs' ultimate request for declaratory relief.

## DISCUSSION

Before turning to the merits of the Preliminary Injunction Motion, the Court first considers two arguments asserted by Defendants that would halt Plaintiffs' request at the Court's door.  Defendants raise two threshold arguments.  The first attacks Plaintiffs' ability to bring this case by arguing Plaintiffs lack standing.  (ECF No. 29 at PageID 397–99.) The second line of attack argues that Plaintiffs have failed to join indispensable parties.  (*Id.* at PageID 399–400.)  The Court will address each in turn but finds neither persuasive.

## I.    Plaintiffs have standing

"The threshold question in every federal case is whether the court has the judicial power to entertain the suit."  *Parsons v. United States Dep't of Justice*, 801 F.3d 701, 709 (6th Cir. 2015).  Federal courts derive their judicial power from Article III of the Constitution.  *Spokeo, Inc. v. Robbins*, 136 S.Ct. 1540, 1546 (2016); *see also* U.S. Const. art. III.  This judicial power, though, is not without limit, as Article III confines the exercise of this power to disputes where an actual "case or controversy" exists.  *See Parsons v. United States Dep't of Justice*, 801 F.3d 701, 709–10 (6th Cir. 2015).  As a bulwark in preventing the unlawful exercise of the judicial power, the party bringing suit must satisfy the "irreducible constitutional minimum" known as standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

To establish standing, a party must satisfy three elements.  *See id.*  First, the party must have suffered an injury in fact.  *Id.*  Next, a causal connection must exist between the party's injury and the alleged unlawful conduct.  *Id.*  Finally, a favorable judicial decision must be able to redress the party's alleged injury.  *Id.*  "The party invoking federal jurisdiction bears

the burden of establishing these elements." *Id.* Each element of standing must be "supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* So, while general allegations might suffice in the beginning of proceedings, as the case progresses, the burden of proof for establishing standing becomes more exacting. *Id.*

Defendants seek to stop Plaintiffs' request at the door; for if Plaintiffs lack standing, the Court cannot consider their request for preliminary injunctive or declaratory relief. (ECF No. 29 at PageID 397.) *See also Lujan*, 504 U.S. at 559–60; *United States Student Ass'n Found. v. Land*, 585 F. Supp. 2d 925, 942 (E.D. Mich. 2008). Defendants seek to undermine Plaintiffs' Amended Complaint by arguing that Plaintiffs failed to establish a causal connection between their alleged injury and the CDC's Halt Order. (*Id.* at PageID 397–98.) According to its explicit terms, the Halt Order applies only to "covered persons," *i.e.*, those who have submitted a signed declaration. (*Id.* at PageID 398.) Plaintiffs failed to allege that any of their tenants have invoked the Halt Order's protections let alone whether a tenant has even submitted a signed declaration. (*Id.*) Without this showing, nothing links the Halt Order to Plaintiffs' alleged injury. (*Id.* at PageID 399.)

In rebuttal, Plaintiffs reference allegations concerning the fact that numerous tenants have defaulted on rent and, but for the Halt Order, those tenants would face eviction. (ECF No. 49 at PageID 693–94.) Further, Plaintiffs attached affidavits to their reply brief containing sworn statements from the named Plaintiffs that each has tenants who are behind on rent that have invoked the Halt Order's protections. (*See, e.g.*, ECF No. 49-1 at PageID 701–05.)

Turning to the merits of this argument, this case's procedural posture influences the Court's analysis. Notably, this matter is still in its infancy. *See Lujan*, 504 U.S. at 561 (stating that the evidence plaintiff must produce to establish standing becomes more stringent as the case progresses). Further, the pending motion is one for injunctive relief; meaning, Plaintiffs must show a "substantial likelihood" of success on the issue of standing. *See Waskul v. Washtenaw Cty. Comm. Mental Health*, 900 F.3d 250, 256 n.4 (6th Cir. 2018) ("Put simply, a party who fails to show a substantial likelihood of standing is not entitled to a preliminary injunction.") (internal quotations omitted). The Court determines whether Plaintiffs have made a sufficient showing of standing by "analyzing the material allegations in the complaint." *Henley v. Cleveland Bd. of Educ.*, No. 1:10 cv 0431, 2010 WL 796835, at *2 (N.D. Ohio Mar. 3, 2010).

In reading Plaintiffs' Amended Complaint, the Court finds that Plaintiffs' allegations establish that they have standing. Plaintiffs clearly satisfy two of the three standing requirements: the injury in fact requirement and that a favorable judicial decision can redress their harm. The injury in fact requirement ensures that Plaintiffs have a "personal stake" in the proceeding. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). The injuries suffered must be "concrete and particularized" as well as "actual or imminent." *See Spokeo, Inc.*, 136 S.Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). Plaintiffs allege not only past injuries in the form of unpaid rent but an ongoing injury if the Halt Order remains in place. (ECF No. 21 at PageID 213–14.) Thus, Plaintiffs have produced evidence demonstrating injuries that

are "concrete and particularized" as well as "actual or imminent." Therefore, Plaintiffs have suffered an injury in fact.

Next, Plaintiffs have established that a favorable judicial decision here will remedy their alleged injury. *See Lujan*, 504 U.S. at 560. If the Court enjoins the Halt Order, Plaintiffs can begin to seek evictions for tenants who have defaulted on rental payments. Accordingly, Plaintiffs have established this element of standing as well.

Having satisfied two of the three elements, Plaintiffs must establish the remaining element of standing: the causal link. Defendants pinpoint this as the weak link in Plaintiffs' standing argument. Although Plaintiffs' pleadings are not a paragon of clarity on this issue, the Court finds that Plaintiffs have made a sufficient showing linking the CDC's Halt Order to their alleged injury.

The causal connection element requires that the injury suffered be "fairly traceable" to the defendant's alleged unlawful action. *See Lujan*, 504 U.S. at 560. Plaintiffs' Amended Complaint states that "all Plaintiffs have tenants in Units who are delinquent in the payment of rent and who would be otherwise lawfully evicted from the Units under the URLTA, but for the Halt Order." (ECF No. 21 at PageID 213.) Further, "these tenants have not paid rent since March 2020, and now, between the CARES Act eviction moratorium and the Halt Order, will not pay rent for at least ten (10) months – allegedly subject to even further extension." (*Id.*)[1] Taken together, these statements establish the necessary causal link between the Halt

---

[1]. Although not necessary to the Court's analysis here, the affidavits Plaintiffs attach to their Reply buttress the conclusion that they have standing.

Order and Plaintiffs' injury.   The reasonable inference from these two statements is that Plaintiffs have tenants who have invoked the Halt Order.   Moreover, the continuance of the Halt Order's moratorium on evictions will continue to harm Plaintiffs.   In other words, Plaintiffs' alleged injury can be fairly traced back to the alleged unlawful conduct of the CDC and the Halt Order.   While the Court would benefit from additional information, namely whether tenants have submitted signed declarations, the Court is satisfied that, **at this stage of proceedings**, Plaintiffs have made a requisite showing of standing.   *See Lujan*, 504 U.S. at 561 (stating that plaintiff must sufficiently support standing "with the manner and degree of evidence required at the successive stages of the litigation").

## II.   <u>Plaintiffs have not failed to join indispensable parties</u>

The Court now addresses Defendants' second threshold argument: that Plaintiffs failed to join indispensable parties.   Federal Rule of Civil Procedure 19 governs the required joinder of parties.   To resolve this question under Rule 19, the Court undertakes a three-step process. *See Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1345 (6th Cir. 1993).   First, the Court analyzes if the omitted party is a necessary party.   *See Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004).   Rule 19(a) sets out the criteria for when a party is necessary, stating that:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  A party need satisfy only one of the above criteria to be deemed

necessary.  *Local 670 v. International Union, United Rubber, Cork, Linoleum and Plastic*

*Workers of America, AFL-CIO*, 822 F.2d 613, 618 (6th Cir. 1987).  If the omitted party is in

fact necessary, the Court then looks to determine if personal jurisdiction can be exercised.

*Glancy*, 373 F.3d at 666.  If so, the party shall be joined, *see Keweenaw Bay*, 11 F.3d at 1345–

46, unless joinder would result in depriving the Court of subject matter jurisdiction.  *See*

*Glancy*, 373 F.3d at 666.  If a party cannot feasibly be joined, the Court then analyzes the Rule

19(b) factors to determine if the case should be dismissed in the absence of the omitted party

as the final step.  *Id.*  The Court's analysis "is not to be applied in a rigid manner but should

instead be governed by the practicalities of the individual case."  *Keweenaw Bay*, 11 F.3d at

1346.

In another attempt to cut off Plaintiffs' preliminary injunction request at the threshold,

Defendants assert that Plaintiffs failed to join the tenants that face potential eviction if the

Court were to grant the preliminary injunction.  (ECF No. 29 at PageID 399.)  Defendants

argue that the omitted tenants undoubtedly have an interest in these proceedings, given that

they face potential eviction.  (*Id.* at PageID 400.)  Further, the purported actions or inactions

of these tenants underly this matter; more particularly, whether the omitted tenants submitted

a declaration in order to invoke the Halt Order's protections.  (*Id.*)

Plaintiffs push back against Defendants' notion that the tenants are indispensable

parties.  (ECF No. 49 at PageID 694.)  In support, Plaintiffs direct the Court to look at

Defendants' response to a third-party's motion to intervene and the Court's own Order addressing the third-party's intervention.[2]  (*Id.* at PageID 694–95.)

The Court starts its analysis under Rule 19 by answering the question of whether the omitted tenants are necessary parties to this action.  *See Glancy*, 373 F.3d at 666.  The Court answers that question in the negative.   Therefore, the Court need not go further.  *See Marshall v. Navistar Int'l. Transp. Corp.*, 168 F.R.D. 606, 609 (E.D. Mich. 1996) ("Rule 19(a) is more than a rule of convenience and pragmatism; the rule applies only in situations necessitating joinder.")

Under Rule 19, a necessary party can fall into one of two categories.  Fed. R. Civ. P. 19(a)(1)(A)–(B).   If a party falls into either category, they will be deemed necessary.  *See Local 670*, 822 F.2d at 618.   For the first category, a necessary party is one that, in the absence of that party, the Court cannot provide complete relief among the existing parties.  Fed. R. Civ. P. 19(a)(1)(A).  For the second, the omitted party is necessary if she would be impeded from protecting her interests or subjected to a substantial risk of multiple inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(B).   Here, the omitted tenants fail to fall into either category.

---

2. On October 13, 2020, the Court received a Motion to Intervene from a group known as Neighborhood Preservation, Inc.  (ECF No. 25.)  Neighborhood Preservation, Inc purported to represent a putative class of individual tenants who faced eviction.  (*Id.* at PageID 324.) Defendants responded to the intervention motion, raising arguments against intervention but at the same time, explicitly stating that Defendants took no position on the matter.  (ECF No. 32 at PageID 477.)  Defendants concluded that intervention would be inappropriate because the proposed intervenors lacked a substantial interest in this matter, and Defendants adequately represented whatever interest they might have.  (*Id.* at PageID 481–85.)  The Court entered an Order denying the motion to intervene, ultimately concluding that Defendants adequately represented the purported interests of the third party.  (ECF No. 36 at PageID 591.)

As to the first category, the Court can afford complete relief between the existing parties without joinder of the omitted tenants.  It is true that in some sense the omitted tenants have a general interest in this matter; indeed, a result in favor of Plaintiffs will likely cause tenants who have defaulted on rent to face eviction.  A general interest does not, however, equate to the kind of legally cognizable interest that Rule 19 seeks to protect.  Defendants' effort to highlight this general interest is nothing but a smokescreen, obscuring what lies at the heart of this matter.  At its core, this case turns on the alleged impropriety of the CDC's Halt Order.  As to that issue, the Court can rule without ever implicating the interest of the omitted tenants.

Before delving deeper, it is important to note what the Halt Order does and does not do.  The Halt Order does delay state court eviction proceedings.  Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55,292 (Sept. 4, 2020) ("This Order is a temporary eviction moratorium . . . .").  It does not, however, alter the underlying legal rights and obligations that exist between the parties.  The Halt Order makes this plain:

> This Order does not relieve any individual of any obligation to pay rent, make a housing payment, or comply with any other obligation that the individual may have under a tenancy, lease, or similar contract.  Nothing in this Order precludes the charging or collecting of fees, penalties, or interest as a result of the failure to pay rent or other housing payment on a timely basis, under the terms of any applicable contract.

*Id.*  Thus, these proceedings do not implicate the omitted tenants' interest in a way that Rule 19 would protect.

Second, the omitted tenants' interests are not so situated that their omission would either "impair or impede [their] ability to protect [their] interest or leave [them] subject to a

substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1)(B).  Again, all the Halt Order has done is **delay** state eviction proceedings.  *See* Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55,292 (Sept. 4, 2020).  Enjoining the Halt Order in no way impairs or impedes the ability of tenants to challenge their evictions in state court proceedings.  Indeed, the omitted tenants will still have their day in court.  Moreover, the tenants do not face a substantial risk of multiple inconsistent obligations for they can be evicted from a particular residence only once.

The omitted tenants here fail to fall into either category laid out in Rule 19.  Therefore, they are not necessary to this action.  With these threshold arguments resolved, the Court now addresses Plaintiffs' request for preliminary injunctive relief.

### III.    Plaintiffs are not entitled to a preliminary injunction because they have failed to demonstrate irreparable harm

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).   The Court considers four factors in determining whether to grant an injunction: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction.

*Id.* at 573.  The movant carries the burden of persuasion, and the proof required to obtain a preliminary injunction exceeds that required to survive a summary judgment motion.  *Leary*, 228 F.3d at 739 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)).

Of these factors, this Court focuses first on whether Plaintiffs have made a showing of irreparable harm.  The Sixth Circuit has described this factor as "indispensable" for "if the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit."  *See D.T. v. Sumner Cty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019); *see also Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102–04 (6th Cir. 1982).  "[A] district court is 'well within its province' when it denies a preliminary injunction based solely on the lack of an irreparable injury."  *Sumner Cty. Schs.*, 942 F.3d at 327 (citing *S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 103 (6th Cir. 1991)).

"To merit a preliminary injunction, an injury 'must be both certain and immediate,' not 'speculative or theoretical.'"  *Sumner Cty. Schs.*, 942 F.3d at 327 (citing *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)).  "A party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law."  *N. Cal. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1306 (1984) (citing *Hillborough v. Cromwell*, 326 U.S. 620, 622 (1946)).  An injury that can be cured by an award of monetary damages fails to qualify as irreparable harm at the preliminary injunction stage.  *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

Plaintiffs broadly allege that they have suffered and will continue to suffer irreparable harm because "loss of rental income and exclusive use of their [rental properties] have made their businesses commercially impracticable." (ECF No. 12-1 at PageID 164.) Additionally, Plaintiffs allege that the Halt Order is a clear violation of Plaintiffs' constitutional rights. (*Id.*) Plaintiffs cite to *Elrod v. Burns*, 427 U.S. 347 (1976) and *McNeilly v. Land*, 684 F.3d 611 (6th Cir. 2012), arguing that because they have alleged potential constitutional violations, a finding of irreparable harm is mandated. (ECF No. 12-1 at PageID 164.) In response, Defendants assert that Plaintiffs' claims for damages are monetary in nature, and thus do not constitute irreparable harm. (ECF No. 29 at PageID 401–03.) Defendants further argue that Plaintiffs' reliance on *Elrod* and *McNeilly* is misplaced because those cases involved First Amendment freedoms, which necessarily implicate harms that are difficult to quantify and are thus distinguishable from Plaintiffs' constitutional claims. (*Id.*) This Court agrees with Defendants' contentions.

First, it is hardly arguable that Plaintiffs' first alleged harm, "loss of rental income," is anything other than monetary in nature. Moreover, any loss of rental income is merely temporary because the Halt Order does not relieve tenants of their obligation to pay rent, and the Halt Order allows Plaintiffs to charge and collect fees, penalties, or interest as the result of a tenant failing to pay rent on a timely basis. Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55,292 (Sept. 4, 2020). Plaintiffs also fail to show that they do not have an adequate remedy at law for this alleged harm. Specifically, Plaintiffs may sue their tenants for unpaid rent. *See Elmsford Apt. Assocs., LLC*

*v. Cuomo*, No. 20-4062, 2020 WL 3498456, at *15 (S.D.N.Y. June 29, 2020).  As the Court said in *Elmsford*, "the fact that [a breach of contract action] is not their preferred remedy is of no moment."  *Id.*  This type of temporary monetary harm is the antithesis of the irreparable harm needed to warrant a preliminary injunction.

Second, to the extent Plaintiffs have made an argument that the deprivation of the exclusive use of their rental properties constitutes irreparable harm, this Court disagrees. Plaintiffs make only a passing reference to the interference with their "exclusive use" of their real property, and they do not support their argument with details or case citations explaining why this interference constitutes irreparable harm.  Plaintiffs do not allege, nor is there any evidence before the Court, that any of the Plaintiffs actually reside in their properties or that they seek to reside in a property but have been prevented from doing so because it is occupied by a tenant who is a "covered person" under the Halt Order.  Nor does any Plaintiff allege that it is in danger of losing its properties.  Absent such facts, the temporary interference with Plaintiffs' real property imposed by the Halt Order does not constitute irreparable harm.  *See Mount Clemens Inv. Grp., LLC v. Borman's Inc.*, No. 10-12679, 2010 WL 3998095, at *5 (E.D. Mich. Oct. 12, 2010) ("Plaintiff's argument that the Shopping Center's status as real property automatically means that its loss would result in irreparable harm also fails. Plaintiff's Shopping Center is commercial real estate used as investment property.  Plaintiff can recoup its investment loss through money damages."); *Gordon v. New England Cent. Railroad, Inc.*, No. 2:17-cv-00154, 2017 WL 6327105, at *12 (D. Vt. Dec. 8, 2017) (interference with real property did not constitute irreparable harm where it did not extinguish

property's value or prohibit its use entirely); *Muck Miami, LLC v. United States*, No. 14-24870-Civ-COOKIE/TORRES, 2015 WL 12533140, at *3–4 (S.D. Fla. Feb. 13, 2015) (finding no irreparable harm when property was not owner's residence but only rental property); *Hillyer v. Comm'r*, 817 F. Supp. 532, 537–38 (M.D. Penn. 1993) (finding irreparable harm demonstrated only as to parcel where individual's home was located but not as to two other unimproved parcels).

Finally, this Court finds that Plaintiffs' alleged constitutional claims are insufficient to trigger a finding of irreparable harm.  The two cases Plaintiffs primarily cite in support of this proposition, *Elrod* and *McNeilly*, specifically address the violation of First Amendment rights. *Elrod*, 427 U.S. at 373 ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparably injury."); *McNeilly*, 684 F.3d at 620 (citing *Elrod* and finding district court did not err in failing to find irreparable harm because it did not find a probability of success on the plaintiffs' First Amendment claim).  Plaintiffs' citations to *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) and *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014), are equally unavailing.  *Obama for America* dealt with an Equal Protection Clause claim, and it primarily relied on *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) – another case addressing First Amendment claims – for the proposition that "[w]hen a party seeks a preliminary injunction on the basis of a potential constitution violation, 'the likelihood of success on the merits often will be the determinative factor.'"  *Obama for America*, 697 F.3d at 436.  *City of Pontiac* merely cites to *Obama for America* for this same

proposition but provides no further analysis of the application of the case to the facts at issue there.  This Court is not convinced that Plaintiffs' alleged constitutional violations are necessarily equivalent to the unique, individual injury accompanying a violation of the First Amendment such that they constitute irreparable harm.

Other courts outside of the Sixth Circuit have expressly limited the types of constitutional claims that may constitute irreparable injury.  *See Northeastern Florida Chapter of Ass'n of General Contractors of America v. City of Jacksonville, Florida*, 896 F.2d 1283, 1285 (11th Cir. 1990) ("The only area of constitutional jurisprudence where we have said that an on-going violation constitutes irreparable injury is the area of First Amendment and right of privacy jurisprudence."); *American Petroleum Inst. v. Jorling*, 710 F. Supp. 421, 431–32 (N.D.N.Y. 1989) (Supremacy Clause violation does not constitute irreparable harm); *Grand Cent. Sanitation v. City of Bethlehem*, No. Civ. 94-5928, 1994 WL 613674, at *2 (E.D. Pa. 1994) (Commerce Clause violation is not "necessarily equivalent to the unique, individual injury accompanying a violation of the First Amendment" and does not constitute *per se* irreparable injury); *Pub. Serv. Co. of New Hampshire v. Town of West Newbury,* 835 F.2d 380, 382 (1st Cir. 1987) ("The alleged denial of procedural due process, without more, does not automatically trigger such a finding [of irreparable injury]."); *Miller v. Accredited Home Lenders, Inc.*, No. 2:11-cv-007711 CW, 2011 WL 4964508, at *3 (D. Utah Oct. 19, 2011) (holding that the irreparable injury presumption does not apply to allegations of procedural due process violations).

Most recently, a District Court for the Northern District of Georgia considering a substantially similar challenge to the Halt Order found that Plaintiffs had not shown irreparable harm merely by alleging a constitutional violation.  *See Brown, et al. v. Azar, et al.*, No. 1:20-cv-3702, 2020 WL 6364310, at *18 (N.D. Ga. Oct. 29, 2020).

The fact is, despite Plaintiffs' creative framing, at bottom Plaintiffs are likely to suffer monetary damages, not irreparable harm, and their bevy of constitutional claims do not change this conclusion.  Therefore, because Plaintiffs have failed to establish the irreparable harm factor, the Court need not consider the remaining preliminary injunction factors.  *See Sumner Cty. Schs.*, 942 F.3d at 327.

## CONCLUSION AND SCHEDULING CONFERENCE

It is the Court's duty to "avoid reaching constitutional questions in advance of the necessity of deciding them."  *United States v. Green*, 654 F.3d 637, 646 (6th Cir. 2011).  Addressed herein is Plaintiffs' application for preliminary injunctive relief.  For now, Plaintiffs have failed to adequately demonstrate that they have suffered or will suffer a loss for which there is no adequate remedy at law, which is fatal to their request for a preliminary injunction.  Therefore, for the reasons set forth herein, Plaintiffs' application for preliminary injunctive relief is **DENIED**.

In the alternative, Plaintiffs seek declaratory relief that the Halt Order is altogether void under the Administrative Procedure Act or violates the Constitution.  Whether the Halt Order ultimately stands or falls likely depends upon this Court's construction of the enabling statute,

42 U.S.C. § 264.  Whether Congress exceeded its constitutional authority in the first instance must be the threshold issue for consideration.

At the hearing on the Preliminary Injunction Motion, counsel for Plaintiffs and Defendants offered to provide supplemental briefing on various matters if the Court requests it.  The Court has decided that such briefing is needed in order to fully consider the Constitutional issues that remain.  The Court will confer with counsel to set a scheduling conference to discuss supplemental briefing and any discovery necessary before completing its consideration of the request for declaratory relief.

IT IS SO ORDERED, this 6th day of November 2020.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE