**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| CHAMBLESS ENTERPRISES LLC, and APARTMENT ASSOCIATION OF LOUISIANA, INC.<br>　　　　Plaintiffs,<br>　　v.<br><br>CENTERS FOR DISEASE CONTROL AND PREVENTION; ROBERT R. REDFIELD, in his official capacity as Director, Centers for Disease Control and Prevention; NINA B. WITKOFSKY, in her official capacity as Acting Chief of Staff, Centers for Disease Control and Prevention; DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX AZAR, in his official capacity as Secretary of Health and Human Services; WILLIAM P. BARR, in his official capacity as Attorney General of the United States,<br>　　　　Defendants. | Docket No. 3:20-cv-01455<br><br>District Judge: Terry A. Doughty<br><br>Magistrate Judge: Karen L. Hayes |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, BY SOUTHEAST LOUISIANA LEGAL SERVICES AND ACADIANA LEGAL SERVICE CORPORATION AS *AMICUS CURIAE***

**TABLE OF CONTENTS**

Introduction …………………………………………………………………………….  2

Statements of Interests of *Amici Curiae* ................................................................  3

Argument …………………………………………………………………………….  4

   A. Plaintiffs have failed to provide the Court with facts that affect the appropriateness of the plaintiffs succeeding on the merits.  4

   B. Consideration of the public interest and balance of hardships requires consideration of what will happen to the tenants protected by the CDC Order.  6

Conclusion ……………………………………………………………………………...  13

Certificate of Service ……………………………………………………………………...  14

1

**TABLE OF AUTHORITIES**

| | |
|---|---|
| *D.J. v. Columbia at Sylvan Hills, L.P.*, No. 1:19-cv-02232, 2019 U.S. Dist. LEXIS 234412, 14-15 (N.D. Ga. July 25, 2019) | 14 |
| *Jackson v. Jacobs*, 971 F. Supp. 560 (N.D. Ga. 1997) | 14 |
| *Mitchell v. United States Dep't of Hous. & Urban Dev.*, 569 F. Supp. 701 (N.D. Cal. 1983) | 14 |
| *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307 (E.D.N.Y. 2012) | 14 |
| *Tenants for Justice v. Hills*, 413 F. Supp. 389 (E.D. Pa. 1975) | 14 |

**INTRODUCTION**

Southeast Louisiana Legal Services ("SLLS") and Acadiana Legal Service Corporation ("Acadiana") are the two Louisiana recipients of funds from the Legal Services Corporation established under Pub. L. 93-355 (1974) as amended; Pub. L. 95-222 (1977), and 42 U.S.C. 2996-29961. They are both civil legal aid agencies serving the most economically vulnerable families in Louisiana.

At the end of August 2020, these families faced a cliff. Many service and hospitality industry workers had been out of work since the beginning of the pandemic, but two key protections of the CARES Act expired near the end of July. One was "Pandemic Unemployment Compensation," which was intended to provide near full-wage replacement for workers laid off during the pandemic, by adding $600.00 per week to normal unemployment compensation amounts. Public Law 116-136, §2104(e). The second was protection against eviction for non-payment for tenants in federally related properties. The protection expired in July, but landlords were required to give 30 days' notice before they could act on it. Public Law 116-136, §4024(b)

and (c). In addition, a state eviction moratorium established by Executive Orders as to other properties expired on June 15. 30 JBE 2020 § 5 A & D (initial suspension); 75 JBE 2020 § 3 at H. 1 & 6 (last extension, running through June 15).

As of September 1, 2020, Louisiana was still in "Phase 2" of reopening, and people were still not back to work. Others experienced income loss due to illness, quarantine or lack of childcare. In July, a statewide rental assistance program had shut its doors after four days due to the volume of applications.[1] An eviction and homelessness crisis was imminent, as families had nowhere to turn.

The Centers for Disease Control ("CDC") Order temporarily halting certain residential evictions, effective September 4, 2020, was a godsend for the families that SLLS and Acadiana serve. It prevented the eviction of thousands of children at the beginning of the academic school year, curbed an epidemic of homelessness that threatened to spread COVID-19 in congregate shelters and doubled-up family settings, and reinforced the need for tenants to work with their landlords to get current.

Beyond the legal arguments and statistics at issue here are real human beings. SLLS and Acadiana contribute this memorandum to share a tenant perspective ans small sample of stories of their clients whose evictions have been prevented by the CDC Order. If the CDC Order is enjoined, these clients and thousands of other Louisiana residents in similar situations will face immediate and irreparable harm.

## STATEMENTS OF INTERESTS OF *AMICI CURIAE*

**Southeast Louisiana Legal Services** ("SLLS") is the free civil legal aid agency serving low-income families in twenty-two parishes across Southeast Louisiana. SLLS's services include

---

[1] *Louisiana COVID-19 Rent Help Stopped After 40,000 Apply*, ASSOCIATED PRESS, Jul. 19, 2020, https://apnews.com/article/b50c1e96f9c51406606b643e16f6279b.

3

eviction defense. Since September 4, 2020, the effective date of the CDC Order, SLLS has represented approximately 684 clients in evictions across its service area. These 684 households contain roughly 1,600 individuals. The majority of SLLS client households include children, have family members with disabilities, or both. Many of SLLS's clients are tenants of companies that are members of Plaintiff Apartment Association of Louisiana, Inc. Many of these clients have qualified for and used CDC declarations to prevent their eviction during the nationwide moratorium.

**Acadiana Legal Service Corporation** ("Acadiana") is the free civil legal aid agency serving low-income families in Louisiana's other forty-two parishes. Acadiana's services include eviction defense. Many of Acadiana's clients, too, are tenants of companies that are members of Plaintiff Apartment Association of Louisiana, Inc. Many of these clients have qualified for and used CDC declarations to prevent being evicted during the nationwide moratorium.

## ARGUMENT

### A. Plaintiffs have failed to provide the Court with facts that affect the appropriateness of the plaintiffs succeeding on the merits.

Plaintiff Chambless purports to have filed this suit because it attempted to evict an unnamed individual or family, referred to simply as "Tenant A." It was prevented from doing so because its attempt to evict violated the CDC's Order to halt evictions to prevent further spread of Covid-19. Chambless would "like to evict" that tenant and also wants to evict others. (Complaint ¶ 39.) To these Amici it seems the Defendants have appropriately supported the legality of the CDC Order at issue. But if the Court were inclined to find the Plaintiffs have a substantial chance of prevailing, there are some key facts, as seen from a tenant's perspective, that have not been provided and affect the appropriateness of this Court granting relief.

Plaintiffs name the CDC and various surrogates as Defendants in this suit, requesting declaratory relief and injunctions "forbidding Defendants from enforcing" the CDC Order. Yet Plaintiffs cite no actions the Defendants have taken to enforce the Order against them.

Given the absence of allegations about "enforcement," Plaintiffs' true concern seems not to be CDC enforcement actions. Instead, Plaintiffs are instead concerned about the rule of decision applied in the earlier state court proceeding, and want this Court to alter the rule of decision. Yet Plaintiffs do not even set out whether an appeal has been filed in the state court proceeding.

Plaintiffs have not even provided this Court with the actual outcome of that state court proceeding: Was the case dismissed, or is it still pending and held in abeyance pending the end of the moratorium in three weeks? Did Chambless raise its challenge to the purported illegality of the CDC Order in that proceeding? Was there a ruling on its challenge there? If not presented in that case with the affected tenant as a party, can it still be? Why was the tenant Chambless wants to evict not made a party to this collateral attempt to undermine the state court's position?

Plaintiffs also do not explain to the Court how the relief they seek is likely to be redressed by a favorable judicial decision. The Order they seek is against the CDC and surrogates. Yet the gravamen of their complaint is against action a state court has taken and is anticipated to take based on the Order. Given Plaintiffs name no tenants in this suit, it will not be *res judicata* in the possibly pending or future state court proceedings. Instead, Plaintiffs apparently depend on further events by actors not before the Court: actions the other actors are expected to take within December, even before appeal periods run in this suit. Plaintiffs do not explain how non-parties should be bound before a judgment is final, or how the non-parties can

be counted on to follow this Court's Order, if in plaintiffs' favor, when to date other courts have denied preliminary relief on the same or similar issues.

Their Proposed Order, Rec. Doc. 5-3, merely provides that a preliminary injunction is granted, without reaching the comity and relief questions latent in their suit.

**B. Weighing the public interest and balance of hardships requires considering what will happen to the tenants protected by the CDC Order.**

SLLS and Acadiana clients will face eviction, homelessness, and virus exposure if the CDC Order is enjoined. The following are examples of SLLS and Acadiana clients who have avoided or delayed eviction and all of its adverse impacts as a result of the CDC moratorium.

**Philip McAlister** is a 70-year-old disabled veteran in Leesville, Louisiana (Vernon Parish). In addition to being a senior, Mr. McAlister is a diabetic and recently had heart surgery. All of these are conditions placing him at higher risk for COVID-19, according to the CDC. Although he used to work as a diesel mechanic, he has been unable to work during the pandemic because of his fear of catching COVID-19, as his age and comorbid health conditions increase his risk of serious illness if infected. Mr. McAlister's landlord filed to evict him. Due to the CDC moratorium, the judge refused to evict him within 24 hours as otherwise permitted under Louisiana law. Instead, he has until the end of the year to find new housing. Without the extra time Mr. McAlister would likely be homeless and vulnerable to COVID-19 infection.

**Josh McKissick** is a renter in Alexandria, Louisiana (Rapides Parish). Mr. McKissick currently has no income because he got hurt on the job in 2018 and is still waiting on his Social Security Disability. His fiancée is a healthcare worker who works with seniors. They have four children ages two to seventeen. Her income is the family's sole income. She was laid off at the beginning of the pandemic from her healthcare job. She received expanded unemployment benefits, which ended in late July. When the expanded unemployment expired, she dropped

6

down to unemployment income of $100.00 per week. She only recently got back to work in healthcare, but the family is struggling to catch up. Mr. McKissick's landlord filed an eviction against him because the family fell behind on rent. Due to the CDC Order, the judge stayed the eviction through the end of December. This gives the family more time to catch up and apply for government rental assistance. If evicted, the family has nowhere to go and Mr. McKissick is particularly concerned about COVID-19 exposure because his teenage son has asthma and is therefore at higher risk of serious illness if infected by COVID-19.

**Kenisha Hunter** is a 43-year-old renter in Marrero, Louisiana (Jefferson Parish). She is currently undergoing treatment for cervical cancer, which undermines her immune system. As a result she is more vulnerable to serious illness if exposed to COVID-19. Ms. Hunter worked in the hospitality industry at a Holiday Inn until March 2020 when she was laid off due to COVID-19. She currently receives only $107.00 in unemployment benefits per week. She has been looking for work and has had two job interviews but has yet to get a call back. Because of her COVID-19-related job loss she got behind on her rent. She applied for and qualified for rental assistance through Jefferson Parish as well as a non-profit organization, but the amount of assistance did not cover the entire debt. In October 2020, her landlord filed an eviction. In court she was unrepresented by counsel and agreed to get current on her rent by a certain date; however, she was unable to catch up because of her lack of income. When her landlord threatened to obtain a writ of ejection and physically remove her, she provided a copy of the CDC declaration to her landlord and the court. As such, her eviction was halted until January 1, 2020. In the meantime she has applied for and obtained additional rental assistance. If evicted, Ms. Hunter has nowhere to go and is fearful of COVID-19 exposure due to her cancer treatment.

**Telitha Turner** is a 32-year-old renter in Harvey, Louisiana (Jefferson Parish). She has three young school-age children ages eleven, twelve and thirteen. Her children attend remote school due to the pandemic, and childcare is no longer available before and after school. She has no other affordable childcare options; therefore, she had to cut down on her hours as a tech at an eye clinic. Ms. Turner got behind on her rent and her landlord filed to evict her. She provided the CDC declaration to her landlord, and due to the CDC Order her eviction was dismissed. She is applying for rental assistance and using her best efforts to catch up on rent. If evicted, Ms. Turner and her children have nowhere to go. Her only family member is her mother, who has health conditions that make her extremely vulnerable to adverse outcomes if infected with COVID-19. Ms. Turner is still exposed to the public during her reduced hours at the eye clinic.

**Nicole Verdin** is a 40-year-old renter in New Orleans, Louisiana (Orleans Parish). She is a paramedic and first responder who missed fourteen days of work due to a mandated quarantine after a COVID-19 exposure on the job in April and May of 2020. She missed more work due to a second COVID-19-related quarantine in July and August of 2020. As a result of missed work she got behind on her rent. Her landlord filed to evict her. She provided a CDC declaration, and the eviction was dismissed. The delay gave her more time to catch up on rent and apply for rental assistance. She has been able to secure rental assistance to cover a substantial portion of the debt.

**Timothy and Inez Blakes** are renters in their 60s who live in Metairie, Louisiana (Jefferson Parish). They both lost work due to the pandemic. Mr. Blakes is a truck driver whose schedule was cut in half due to COVID-19. Neither was successful in obtaining unemployment benefits. As a result, they got several months behind on rent. They made a $5,000.00 payment to catch up, but their landlord filed for eviction anyway even though they were only a month behind. Mr. Blakes completed a CDC declaration and provided it to his landlord in court. As a

result, his eviction was dismissed. He and his wife have nowhere to go if evicted and are vulnerable to serious illness if infected with COVID-19 due to their age.

**Julie Ray** is a 42-year-old renter in Pearl River, Louisiana (St. Tammany Parish). She lives with her adult daughter and teenager. She got behind on rent because when her mother passed away from COVID-19, she lost her own work as a caregiver and also had to pay funeral expenses. Her adult daughter was laid off at the beginning of the pandemic due to COVID-19 and did not get her job back until September 2020. The family was receiving expanded unemployment benefits until the end of July, but then benefits dropped to $99.00 per week before Ms. Ray's daughter returned to work. Ms. Ray applied for rental assistance through the Louisiana Housing Corporation, but her landlord would not respond to their requests for information so the assistance was never provided. Ms. Ray submitted a CDC declaration to her landlord, and her eviction was dismissed due to the CDC Order. Ms. Ray and her family have nowhere to go if they are evicted. Her adult daughter has a comorbid condition that makes her more vulnerable to serious illness if infected with COVID-19, so she is fearful of becoming homeless and potentially contracting the virus.

**Andrea Ohmer** is a 67-year-old renter in Thibodaux, Louisiana (Lafourche Parish). Her husband Howard Ohmer was laid off from his job as a construction laborer in July 2020 due to COVID-19. He has diabetes and five stents in his heart, and his doctor has warned him against going back to work due to his extreme vulnerability to serious illness or death if infected with COVID-19. Mr. Ohmer was never able to access unemployment benefits, and as a result the couple has no income. Ms. Ohmer is also vulnerable to serious illness due to her age and hypertension. Their landlord filed an eviction due to nonpayment of rent, but it was dismissed as

a result of the CDC moratorium. Mrs. and Mr. Ohmer have been trying to catch up and were able to obtain $2,000.00 in assistance from a charity. If evicted, they have nowhere to go.

**Terrelle Wilson** is a 56-year-old renter in New Orleans, Louisiana (Orleans Parish). She is a survivor of domestic violence. Like many survivors, the abuse Ms. Wilson was experiencing got more severe during the pandemic due to increased isolation and economic vulnerability. She had to get a protective order and was unable to stay at home for fear that her former partner would harm her. She had to pay expenses for alternative living arrangements, which caused her to fall behind on rent payments. During this time she also lost a loved one to COVID-19. Her landlord filed an eviction against her, but due to the CDC Order her eviction was dismissed. This allowed her to start catching up on rent payments. If evicted Ms. Wilson has nowhere to go other than to her abuser. By preventing her eviction, the CDC Order has reduced the risk of Ms. Wilson being further victimized by domestic abuse and COVID-19.

**Brian McGlothin** is a 25-year-old renter in New Orleans, Louisiana (Orleans Parish). He and his girlfriend have a five-year-old son. Mr. McGlothin worked at a French Quarter oyster bar before the pandemic but was laid off due to COVID-19 restaurant closures. He applied for new jobs and took the first one he could find, a job at McDonald's; however, his hours were reduced from before the pandemic, so he fell behind on rent. He was not able to access unemployment assistance because he continued to work. His landlord filed to evict him, and he provided a CDC declaration. The eviction was postponed until January due to the CDC Order, giving him and his girlfriend more time to get the money together and apply for assistance to pay the back rent.

**Heidi Breaux** is a 35-year-old renter in Baton Rouge, Louisiana (East Baton Rouge Parish). Ms. Breaux has two school-age children, ages ten and thirteen. Before COVID-19 she worked two jobs to make ends meet, one as a cashier at Albertson's grocery store, and the other

doing data entry at the Louisiana Department of Revenue. She was laid off from Albertson's in May 2020 because of the pandemic. She had to leave her job at the Department of Revenue at the end of June because her babysitter caught COVID-19. She had no one to watch her children. She briefly received an extra $300.00 a week in federal unemployment benefits in September but then returned to receiving only $120.00 per week in unemployment. She applied for new jobs and finally got a job at the beginning of November working as a custodian at a church. She is doing her best to catch up on rent. She even obtained approval for three months of rental assistance from the Louisiana Housing Corporation, but her landlord refused to provide required information to that agency. Ms. Breaux provided a CDC declaration to her landlord, and her eviction was stopped. If evicted, she has nowhere to go. She is particularly concerned about COVID-19 exposure because her teenage child has asthma, one of the conditions at increased risk from COVID-19 exposures.

**Ashley Paul** is a 21-year-old renter in Laplace, Louisiana (St. John the Baptist Parish). She is a single mother of a two-year-old child. Ms. Paul worked as a receptionist at the New Orleans International Airport before COVID-19 but was laid off in March due to the pandemic. She received expanded unemployment benefits from the federal government until the end of July, but then her benefits dropped to $98.00 per week. As a result, she fell behind on rent for August, September and October. She attempted to enter into a payment plan with her landlord but was not able to keep up due to her limited income. Her landlord gave her an eviction notice, and she provided a CDC declaration. As a result of the CDC Order, her eviction was dismissed and with the extra time she was able to nearly catch up on rent.

**Tyler Staley** is a renter in Keithville, Louisiana (Caddo Parish). He lost his job due to COVID-19 and his landlord filed to evict him in October 2020. He provided a CDC declaration,

and his eviction was dismissed. Mr. Staley is now using his best efforts to catch up on rent before December 31, 2020, when the CDC Order expires.

**Robert Williams** is a 45-year-old renter in Baton Rouge, Louisiana (East Baton Rouge Parish). Mr. Williams' wife lost her job at Cintas, the uniform company, in March 2020. They support two minor children. With their household income substantially reduced they got behind on rent. Mr. Williams received a Notice to Vacate from his landlord in September 2020. They attempted to make a partial rent payment, but the landlord would not accept it. However, they provided the CDC declaration and the eviction was dismissed. This gave them more time to work with their landlord, try to bring their account current and apply for government assistance.

Federal courts have repeatedly recognized that risk of homelessness presents immediate and irreparable injury even under normal circumstances. *See e.g., D.J. v. Columbia at Sylvan Hills, L.P.*, No. 1:19-cv-02232, 2019 U.S. Dist. LEXIS 234412, 14-15 (N.D. Ga. July 25, 2019)("Courts have found that the 'threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable harm and satisfy the first prong of the test for preliminary injunctive relief.' [citationas omitted]… This Court agrees."); *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 328 (E.D.N.Y. 2012) (the "threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable harm and satisfy the first prong of the test for preliminary injunctive relief."); *Mitchell v. United States Dep't of Hous. & Urban Dev.*, 569 F. Supp. 701 (N.D. Cal. 1983) (holding that if preliminary injunction is not issued the plaintiff would surely suffer irreparable harm because the scarcity of subsidized housing would render her homeless); *Jackson v. Jacobs*, 971 F. Supp. 560, 565 (N.D. Ga. 1997) (holding that the irreparable injury of homelessness "can hardly be gainsaid."); *Tenants for Justice v. Hills*,

413 F. Supp. 389, 393 (E.D. Pa. 1975) (holding that homelessness is a great and irreparable harm).

As detailed in the amicus brief submitted by the American Academy of Pediatrics *et al* in this case, being homeless carries an even greater risk of irreparable harm during the COVID-19 pandemic. Indeed, the well-documented public health consequences of eviction form the basis for the CDC Order. Irreparable harm, illness, and death to some affected tenants would increase in the absence of the CDC Order.

## CONCLUSION

It is difficult to assign a probability of success to Plaintiffs' suit given scant facts about the relationship of the suit to the state court actions it seeks to affect. In addition, how a favorable judicial decision, especially a non-final injunction, would redress the claimed harm, when the intended targets of relief are not before the Court, has not even been addressed.

The tenants whose stories are described herein are a small sample of the individuals who stand to face immediate eviction, homelessness, and potential COVID-19 exposure and infection without the protection of the CDC Order halting certain evictions. The situations that thousands of similar families will face present an important consideration in weighing both the public interest and balance of hardship factors for Plaintiffs' motion for preliminary injunctive relief.

Respectfully submitted:

\_\_/s/ David Williams_____
David H. Williams, LSBA # 17867
Southeast Louisiana Legal Services
1340 Poydras St. Suite 600
New Orleans, Louisiana 70112
Telephone: (504) 529-1063
Fax: (504) 596-2241
dwilliams@slls.org

\_\_\_/s/ Walter P. McClatchey Jr._____
Walter McClatchey, LSBA # 18649

13

Legal Services of Central Louisiana
(A Division of Acadiana Legal Service Corporation)
1808 Jackson Street
Alexandria, Louisiana 71301-6434
Telephone: (318) 443-7281 Ext. 3203
Fax: (318) 443-9516
walter@la-law.org

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2020, I electronically filed the Motion for Leave and attached Memorandum of Amici Curiae in Opposition to Plaintiffs' Motion for Preliminary Injunction using the Court's CM/ECF system, which will automatically send copies to all counsel of record. There are no parties unrepresented by counsel and not being served through the CM/ECF system.

/s/ David Williams
David Holman Williams